### JOHN ALT V. STATE OF NEBRASKA.

FILED JANUARY 9, 1911.    No. 16,767.

1. **Criminal Law:** INSTRUCTIONS. In a criminal prosecution, the trial court in giving instructions may describe the offense in the language of the statute.

2. ———: ———. In charging the jury, it is not necessarily improper to make quotations from the statute under which defendant is being prosecuted.

3. **Telegraphs and Telephones:** USE OF HIGHWAYS. The act granting to electric power companies the right to use public highways for poles and wires (Comp. St. 1909, ch. 26a., sec. 1) does not apply to telephone companies whose operations are confined exclusively to telephone service.

4. ———: RIGHTS AT RAILROAD CROSSINGS. Where a telephone company constructs its lines along a public highway in a proper manner under the terms of a legislative grant and uses them in the public service, a railroad company has no authority, either by itself or by an employee, to treat the wires at a railroad crossing as a nuisance and cut them down, if they do not in any way endanger railroad employees or interfere with the moving of trains or with the railroad right of way.

5. ———: ———. In determining the respective rights of a telephone company and a railroad company at a place where the telephone wires on a public highway cross the railroad right of way, the rights of the public as well as property rights should be considered.

6. **Criminal Law:** DIRECTING ACQUITTAL. Where the evidence in a criminal prosecution will sustain a conviction for the offense charged in the information, it is error to direct an acquittal.

7. ———: CRIMES OF AGENTS. "The fact that a defendant was acting as the agent of another in the commission of an offense will afford no excuse or justification for the act in a prosecution therefor." *Allyn v. State,* 21 Neb. 593.

8. ———: MALICE. In criminal law, "malice" may denote that condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse.

9. ———: CUTTING TELEPHONE WIRES: MALICE. In a prosecution against a railroad employee for cutting telephone wires on a highway at a railroad crossing, the trial court properly held the jury were justified in finding that defendant, though following the

instruction of his employer, did not act without malice, where the proof showed that the wires did not in any way endanger railroad employees or interfere with moving trains, or with the railroad right of way, and that he had been told by an agent of the telephone company not to cut the wires and had been warned of the consequences.

ERROR to the district court for Hall county: JAMES R. HANNA, JUDGE. *Affirmed.*

*J. E. Kelby* and *O. A. Abbott,* for plaintiff in error.

*William T. Thompson,* Attorney General, *George W. Ayres, J. L. Cleary* and *Bayard H. Paine, contra.*

ROSE, J.

On a section-line highway running north and south between Grand Island and the Soldiers' Home, John Alt, defendant, cut the York County Telephone Company's toll-wires March 7, 1910, where they cross the right of way and track of the Chicago, Burlington & Quincy Railroad Company. Under the charge that he was guilty of the offense described, he was convicted and sentenced to pay a fine of $50. As plaintiff in error, defendant now presents for review the record of his conviction.

The statute which defendant was convicted of violating provides: "That any telegraph or telephone company incorporated or doing business in this state shall be and is hereby granted the right of way along any of the public roads of the state for the erection of poles and wires; provided, that poles shall be set at least six feet within the boundary line of said roadway and not placed so as to interfere with road crossings; and provided, that said wires shall be placed at the height of not less than twenty feet above all road crossings." Comp. St. 1909, ch. 89*a*, sec. 14.

"Any person or persons who shall break, injure, destroy, or otherwise interfere with the poles, wires, or fixtures of any telegraph or telephone company in this state shall

be subject to action and penalty prescribed in section 98, chapter 13, criminal code." Comp. St. 1909, ch. 89a, sec. 15.

Defendant did not attempt to controvert proof of these facts: Assuming to act under authority of the statute quoted, the York County Telephone Company in September, 1909, erected its poles along the highway. Six telephone wires were strung on the poles in December, 1909, and thereafter were used for long-distance service, but they had been cut at the railroad crossing a number of times before defendant was arrested. Early in the morning, March 7, 1910, Charles J. Palmer, an agent of the telephone company, hid behind a big signboard and watched the crossing. Pretty soon a section gang came up the railroad on a hand-car and stopped. A little later a bridge gang of which defendant was a member arrived in the same manner, but before any overt act had been committed Palmer accosted them and a conversation in regard to the wires ensued. At that time the wires crossing the railroad track were supported by two 45-foot poles, one being north of the track and the other south of it. The poles were 115 feet apart. One was seven feet and the other eight feet outside of the railroad right of way. Both were six feet within the boundary line of the highway. The wires were 30 feet above the rails at the crossing and were in good condition. There was nothing about either the poles or the wires to interfere with the passage of trains or with a man on a box car. That the wires in no way disturbed railroad traffic or endangered employees is further evidenced by the fact that an attorney for the railroad company, in testifying on behalf of defendant to the civil nature of the controversy, said that had a suit been brought to enjoin the cutting of the wires they would have been allowed to remain without a temporary injunction until the termination of the suit. With the poles and the wires in the situation and condition indicated by this undisputed proof, the conversation to which reference has been made took place. According to the

testimony of Palmer, the sum of what was then said and done is: The section foreman said he "couldn't see any reason why the Burlington wanted the wires cut." Defendant, who was an employee of the railroad company, asked if he should cut the wires, and the section foreman suggested: "You came out here to cut them?" Defendant answered "Yes," and was told: "Do as you please." Palmer warned defendant he had better not do it, and said in his presence he would be arrested if he did. Afterward defendant climbed a pole, cut one of the wires at a place outside of the railroad right of way, and was told by Palmer to cut no more, but immediately cut the others.

Correspondence between the respective counsel for the two companies and oral proof were adduced by defendant to show that in the cutting of the wires he acted under the direction of his employer; that the direction was given in the assertion of a legal right to prevent the telephone company from running its wires across the right of way without permission of the railroad company, and that defendant acted without the malice essential to the commission of a crime.

Defendant argues that the conviction should be reversed because the court gave an instruction containing a copy of the statute violated. It is proper to describe an offense in the language of the statute. *Long v. State,* 23 Neb. 33. To quote from the statute under which defendant is being prosecuted is not necessarily erroneous. *Mills v. State,* 53 Neb. 263. Defendant does not question these principles, but insists that the trial court, in quoting without explanation the statute which authorizes telephone companies to use the highways for poles and wires, deprived him of the benefit of another statute prohibiting such companies from crossing the right of way of a railroad company without its permission. That act, among other things, provides: "That all persons, associations, and corporations engaged in the generating and transmitting of electric current for sale in this state for power or other purposes, are hereby granted the right of way for

all necessary poles and wires along, within, and across any of the public highways of this state." Comp. St. 1909, ch. 26a, sec. 1. Provision is also made for suspending such wires across railroad tracks and for fining those who do so in violation of the terms of the statute. In the present case the evidence shows that the York County Telephone Company's wires which crossed the railroad right of way were used alone for long-distance telephone service, and not for the purposes described in the statute. It is apparent from the entire act that it does not apply to telephone lines constructed and used exclusively for such a purpose, and that it affords no justification for the conduct of defendant in cutting the wires.

Further complaint is: The instruction was given without qualification and left the jury to infer that the telephone company had acquired an absolute right to the use of the highway without regard to the following considerations: The railroad company owns the fee to the land at the crossing. The public has a mere easement for highway purposes. The wires subject the railroad right of way to an additional burden. The telephone company has no right to cross the track without permission. When permission is given, the railroad company is entitled to compensation. Overhead wires are dangerous. The wires should be laid in a conduit under the track. The burden of keeping the crossing in a safe condition for travel is on the railroad company. Conceding all these propositions for the purpose of the argument, but for no other purpose, did defendant have a lawful right to cut the wires, when directed by his employer to do so? A text-writer says: "A telephone wire stretched over the property of another without authority, but causing no obstruction, is not a nuisance which may be summarily abated by cutting the wire." McMillan, Telephone Law, sec. 88.

Reasons for applying this doctrine to the present case are obvious. The state, in the proper exercise of its power to control public highways, may authorize a tele-

phone company to use them for its poles and wires. 1 Joyce, Electric Law (2d ed.) sec. 143. The legislature exercised that power, and it was under the legislative grant that the telephone company acted in constructing its lines. It was a common carrier of intelligence and news. *State v. Nebraska Telephone Co.*, 17 Neb. 126; *Nebraska Telephone Co. v. State*, 55 Neb. 627. It was devoting its property to a public use when its wires were cut. *City of Plattsmouth v. Nebraska Telephone Co.*, 80 Neb. 460. To protect that use and the property invested in the enterprise the legislature made interference with the wires unlawful. The rights of the public as well as property rights must be considered in matters of this kind. "If in any way avoidable," said this court in an opinion by Commissioner RYAN, "there should be tolerated no resort to so radical a measure as the interruption of traffic." *Blakely v. Chicago, K. & N. R. Co.*, 46 Neb. 272. *Chicago, B. & Q. R. Co. v. Englehart*, 57 Neb. 444; *State v. Missouri P. R. Co.*, 75 Neb. 4.

In *Bronson v. Albion Telephone Co.*, 67 Neb. 111, this court, in an opinion by Commissioner POUND, said: "We do not think public utilities of this kind ought to be suspended until every abutting owner upon the streets or highways to be used has been duly appeased. If he has been substantially or appreciably injured, an action at law will ordinarily afford him full compensation. If he has not, no opportunity for extorting an unreasonable settlement should be afforded him."

In a case in point the following language was used by the supreme court of Alabama, though the opinion was not officially reported: "The theory of the defense was, and is, that, as the owner of the telephone line without the consent of the railroad company, and without condemnation proceedings, had crossed the right of way of the railroad company, the railroad company had the right to cut and remove the wire, and its employee acting under its instructions could therefore be guilty of no offense. The facts in the case will not justify such defense. The tel-

ephone line as constructed created no obstruction to the railroad company in the operation of its road, and if it should be conceded that the owner of the telephone line violated the property rights of the railroad company, in erecting the telephone line without first having obtained consent, or having taken condemnation proceedings, this would not authorize the defendant, under the instructions of the railroad company, to take the law into his own hands, in plain violation of the statute. The statute is clear and unambiguous in its language, and makes it an offense for any one to wilfully cut a telephone line. It makes no exception, and certainly the facts in the case before us do not create one, but leave the defendant undoubtedly within its provisions. Nor is it material whether the cutting was done with an evil motive or purpose. It is enough if it was done wilfully." *McGowan v. State,* 40 So. (Ala.) 142.

When defendant cut the wires in the public highway, they were not obstructing trains or endangering railroad employees. If the rights or property of the railroad company were invaded by the telephone company, as suggested by defendant, the courts were open for the purpose of granting adequate relief. Under the facts disclosed by the record, the protection of those rights did not justify a resort to violence or require the destruction of property which was at the time on a public highway and being used in the public service, and the jury were justified in so finding. In giving the instruction assailed, the district court did not err.

Another assignment of error involves the following instructions:

"(12) You are instructed that where there is in fact a controversy between two parties over their legal rights and one of the parties does or causes to be done an act in the honest belief that he is protecting his own property, there can be no such criminal intent as is necessary to make such act punishable as a crime, and in this case, if you find that there was a controversy between the rail-

road company and the telephone company in good faith over their respective rights in regard to the construction of a telephone line across the tracks and right of way of the railroad company, and, in pursuance thereof, the railroad company directed the defendant, who was then in its employ, to remove the wires of the telephone company from its tracks and right of way in the course of such employment, and defendant in good faith and without malice cut the wires, then you should return a verdict of not guilty.

"(13) You are instructed that, if you find from all of the evidence in the case that the poles and wires of the York County Telephone Company were erected and constructed in a careful, skilled, and workmanlike manner, and as provided by law, and so as to offer security to life and property in operation of railroad, and that the wires thereof crossed the right of way of the railroad company, that they were not interfering with the use of the railroad company in its use and occupancy of its right of way, and that said telephone line at the point of said intersection was in good condition and in a good state of repair at the time it is charged that said wires were cut, and that they were occupying a legally established highway in said county at a point crossed by said railroad company, then said railroad company would not have the right to cut and remove the wires of the telephone company, nor could the railroad legally authorize any of its employees to cut or molest the said wires."

Defendant insists that instruction 13 misstates the law and nullifies instruction 12. This criticism is not well founded. Instruction 13 is in harmony with the views already expressed in discussing another assignment of error. The instructions should be considered together. Notwithstanding what is said in instruction 13, the jury were previously told in instruction 12 to acquit defendant, if they found there was a *bona fide* controversy between the companies over their respective rights, and that in pursuance thereof he was directed by his employer to

remove the wires, and obeyed the direction in good faith and without malice. Defendant was not entitled to a more favorable instruction on this subject, unless it was the duty of the court to direct a verdict of acquittal. Should such a verdict have been directed? It is suggested in argument that, "whenever it becomes apparent that the criminal law is being used to determine private rights or to secure private advantage, the court of its own motion should at once stop the proceedings and discharge the defendant." The state in the usual manner filed the information and conducted the prosecution. Defendant was not entitled to an acquittal on account of the civil nature of the controversy between the companies, if the evidence justified a verdict of guilty. Where the evidence will sustain a conviction, it is error to direct an acquittal. *State v. Sneff,* 22 Neb. 481. Criminal laws cannot be defeated because offenses grow out of civil controversies. Defendant was not excusable on account of his agency, if the state proved that he committed the offense charged. The law on this point is: "The fact that a defendant was acting as the agent of another in the commission of an offense will afford no excuse or justification for the act in a prosecution therefor." *Allyn v. State,* 21 Neb. 593. The course suggested by defendant on this phase of the case is not warranted by the evidence outlined herein.

Defendant also contends that the conviction cannot be sustained because there was no evidence of malice on his part. He testified he had no ill will toward the telephone company. Malice, however, in its legal sense, does not necessarily signify ill will toward a particular individual, but "denotes that condition of mind which is manifested by the intentionally doing of a wrongful act without just cause or excuse." *Housh v. State,* 43 Neb. 163. Under all the circumstances disclosed, the jury were justified in finding there was "malice" in defendant's act, within the meaning of that word as legally defined. Knowing at the time he cut the wires that they were in

the public highway and that they did not interfere with the traffic of his employer or endanger its employees, he deliberately and wilfully cut them, after he had been told not to do so and had been warned of the consequences.

A reversal is also asked because two witnesses for defendant were not permitted to testify to their knowledge of injuries resulting from overhead telephone wires. The questions calling for testimony of this character had no reference to the wires or place in controversy, and objections thereto were properly sustained.

There is no error in the record, and the judgment is

AFFIRMED.

SEDGWICK, J., concurs in the conclusion.