HARVEY YOST, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.
31 N. W. 2d 538

Filed April 1, 1948.   No. 32356.

*Miles W. Johnston,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Leslie Boslaugh,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and WESTERMARK, District Judge.

WENKE, J.

Harvey Yost, plaintiff in error and defendant below, was charged in the district court for Hall County with two crimes: The first, that of obtaining $2,100 from Helen Hofrichter by false pretenses, and the second, that of converting to his own use $2,100 belonging to Helen Hofrichter, which he was holding for her as bailee. A jury found the defendant guilty of converting to his own use the $2,100 which he held as bailee for Helen Hofrichter. His motion for new trial having been overruled, the court sentenced him to serve a period of seven years in the Nebraska penitentiary. By this error proceeding the defendant seeks reversal of his conviction and sentence. For convenience we shall refer to the petitioner in error as the defendant.

The incident here involved grew out of an acquaintance that developed between the complaining witness Helen O. Hofrichter, a married woman, and defendant Harvey Yost when the former was taken to the county hospital of Douglas County on September 20, 1946, because of a sudden attack of poliomyelitis. At that time defendant was working in the hospital as an orderly.

Bearing in mind the principle that in a criminal action the State is required to prove all of the essential elements of the offense charged beyond any reasonable doubt, we find, from the evidence adduced at the trial, that after the complaining witness left the hospital on October 27, 1946, and went to the Hill Hotel in Omaha to stay, the jury could have found the following happened.

It should here be stated that any facts relating to their associations during this period, except as it relates itself to the crime of which the defendant has been convicted, will not be set out as it would serve no useful purpose.

When the complaining witness left the hospital and went to the hotel the defendant immediately quit his job at the hospital and became her companion. He continued in that relation until he deserted her at a tourist court located at North Platte, Nebraska, in the late afternoon or early evening of November 4, 1946. After she got out of the hospital they stayed at the Hill Hotel for several days. There they caused a disturbance in her room early on the morning of Wednesday, October 30, 1946, when he abused her physically. At that time she received a severe laceration on her head. As a result of this disturbance they were taken into custody by the police. They arranged for their release without any apparent publicity. Then they moved to the Hotel Chieftan in Council Bluffs, Iowa. On October 31, 1946, they went to the Omaha National Bank in Omaha and she withdrew $1,700 of her funds on deposit in the Commercial National Bank of Grand Island, Nebraska, by means of a customer's draft. This money she turned over to the defendant and he used $1,600 thereof to buy a 1941 Buick automobile, being the means they subsequently used to travel. She withdrew an additional $200 of her funds on deposit at the Commercial National Bank of Grand Island on November 2, 1946, in the same manner. Because of her health she desired to return to the hospital but he advised her against it saying he could

do everything for her that they could and did not take her there. She then desired to go home but he told her if she did he would scandalize her by publicizing the trouble she had been in. He told her he was going to take her to Phoenix, Arizona, to her sister's where she could stay to improve her health. He then took her to Grand Island for the purpose of having her draw out the balance of the money she had on deposit in the Commercial National Bank as funds with which to go on that trip. They drove to Grand Island on November 4, 1946, and both went to the bank. He directed her to get cash and waited in the lobby of the bank for her to do so. She then had on deposit a balance of $2,105.08. However, the banker advised her not to take cash but induced her to take a draft for $1,599.73 and travelers' checks totaling $500. These she turned over to the defendant before they left the bank. He became angry because she had not obtained cash. As they were leaving Grand Island they stopped at a filling station at which time he took from her $200 which she had in her purse. They then drove to Kearney, Nebraska. There they cashed the draft and travelers' checks. They both went to the Platte Valley Bank in Kearney and, after they had entered the lobby, he handed her the draft so she could endorse and cash it. When it was cashed he immediately took the proceeds and never returned any part thereof to her. They also went to the Fort Kearney National Bank in Kearney where they cashed the travelers' checks. The same procedure was followed. He handed her the travelers' checks after they had entered the bank so she could endorse and cash them. After she had cashed them he immediately took over the proceeds, none of which he has ever returned to her. They then drove to Cozad, Nebraska, where he bought $500 of travelers' checks, taking the same in his own name. They then proceeded to North Platte, where he registered at a tourist court. She, because of her condition, being weak and exhausted, laid down to rest. This was

about 4 to 4:30 p. m. She awakened between 10 and 10:30 p. m. of the same day, November 4, 1946, and defendant was gone. She contacted the police. Her condition at the time showed evidence of physical violence, having a laceration on her head and bruises on her body. She was weak, fatigued, seemed under a strain, had a faulty memory, was in a run-down condition, and had four or five prick marks on the upper part of her right arm. At all times she seemed to be under the complete domination and influence of the defendant. After the defendant left North Platte he went to Kansas City to get some clothes. He then went on to California, taking the Buick car which had been purchased in Omaha with him and using it as a means of conveyance. No part of the money he obtained from the draft and travelers' checks, which were turned over to him at Grand Island, has ever been returned to the complaining witness. The defendant took it with him when he deserted the complaining witness at North Platte.

It is true that defendant tells a somewhat different story and offered in evidence a letter written and signed by complaining witness at North Platte on November 4, 1946, to the effect that she gave him everything as a gift and exonerated him for his conduct. Of course, the weight of this evidence, under the circumstances, was for the jury and from the record as a whole it is readily understandable why they would give it little, if any, consideration.

Defendant complains because the court failed to sustain his motion to dismiss count one because of the lack of any evidence to support it. He contends that submitting it resulted in prejudice to his rights. Without discussing the question of fact, as relating to the lack of evidence, we think what was said in Morrow v. State, 146 Neb. 601, 20 N. W. 2d 602, under a similar situation, is applicable here. There we said: "The second assignment is that the court erred in refusing to sustain defendant's motion to dismiss count two of the informa-

tion. Whether or not the court was in error is of no consequence since the jury found the defendant not guilty on this count."

Defendant complains on the ground that the evidence fails to establish all the essential elements of the crime charged. It is, of course, true that the State has that burden. Hans v. State, 147 Neb. 730, 25 N. W. 2d 35.

As to the crime of which the defendant here stands convicted, section 28-540, R. S. 1943, provides: "If any bailee of any money, bank bill or note, goods or chattels shall convert the same to his or her own use, with an intent to steal the same, he shall be deemed guilty of larceny in the same manner as if the original taking had been felonious, and upon conviction thereof shall be punished accordingly."

It will be observed that the statute requires there be a bailment of the property; that while so held the bailee must convert the property to his own use; and that such converting to his own use must be with the intent to steal the same.

We said in Morrow v. State, *supra:* "In order to prove a charge of larceny as bailee the burden is on the state to establish that the accused came into possession of the property which is the subject of the charge lawfully and that he thereafter unlawfully and with intent to steal converted it to his own use."

This court has also said that the gist of the offense is the conversion of the property without the knowledge and consent of the owner thereof with the intent to steal the same. See Ford v. State, 46 Neb. 390, 64 N. W. 1082, and Frades v. State, 131 Neb. 811, 270 N. W. 314. The statute does not require that it be without the knowledge of the bailor. Of course, it must be without his consent. If done without the bailor's consent, although he might have knowledge thereof, and all other elements being present, it would still be a crime under this statute. What these cases actually mean is that it must be done without the consenting knowledge of the

bailor for conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another.

"On a charge of larceny as bailee, the proof must show that the defendant was a bailee." State ex rel. Haley v. McCutchan, 104 Neb. 80, 175 N. W. 660.

Here there was evidence to establish that defendant was going to take the complaining witness to her sister's at Phoenix, Arizona, for her health and that she withdrew the funds from the bank and turned them over to the defendant to enable her to go on that trip.

As stated in 6 Am. Jur., Bailments, § 4, p. 141: "* * * the term (bailment) may be said to import the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, * * *."

As has already been quoted from Morrow v. State, *supra:* "In order to prove a charge of larceny as bailee the burden is on the state to establish that the accused came into possession of the property which is the subject of the charge lawfully and that he thereafter unlawfully and with intent to steal converted it to his own use." The opinion then goes on to state: "There is no requirement that a bailment within the meaning of this statute shall be created in any particular way. With the reported cases as illustrations it becomes clear that the statute is satisfied if it be proved that the property be received lawfully and thereafter converted with intent to steal."

Under the facts as disclosed by the record the jury was fully justified in finding the defendant came into possession of the property as bailee. See Adams v. State, 138 Neb. 613, 294 N. W. 396.

The State must also prove, beyond a reasonable doubt, that the complaining witness did not consent to or authorize the defendant's assumption and exercise of

the right of ownership to the funds. As stated in State v. Omaha Nat. Bank, 66 Neb. 857, 93 N. W. 319: "No one would contend that if the owner of property delivered it to a person and requested him to dispose of it in a prescribed manner and the request was complied with, an action of conversion would lie against such person; * * *."

Here the evidence shows the defendant deserted the complaining witness at North Platte and took with him all of the funds received from the draft and travelers' checks. He departed at a time when she was sleeping and such departure was unknown to her until she awakened, when she immediately became aware thereof. What was said in Rema v. State, 52 Neb. 375, 72 N. W. 474, is applicable here: "If we are able to comprehend the effect and force of the testimony, the answer must be that there was an entire lack of consent, although no witness in express terms so stated at the trial."

We think the jury was fully justified in finding from the evidence that the defendant's taking and his use of these funds, which had been entrusted to him, was unauthorized and without the consent of the complaining witness.

Defendant also contends that the evidence fails to show the commission of the crime charged to be within Hall County so as to give the district court for that county jurisdiction.

"All criminal cases shall be tried in the county where the offense was committed * * *." § 29-1301, R. S. 1943.

The facts relating to what transpired has been sufficiently set forth in the statement of what the jury could have found. After the draft and travelers' checks were turned over to defendant in the bank at Grand Island they were subsequently endorsed and cashed by the complaining witness in the two banks at Kearney in the manner as has already been set forth.

As held in Cohoe v. State, 82 Neb. 744, 118 N. W. 1088: "In a prosecution for larceny of money by a bailee,

where the transaction constituting the offense extends through different counties, the venue may be laid and the prosecution had in the county where the bailment arose, and where the defendant has to account for and pay over the money on demand to the one entitled to its possession." It is stated in the opinion: "Like questions have been decided by many courts of last resort, and it is said in their opinions that it often appears that the venue cannot be laid in the county where the conversion actually took place. We think the authorities agree that, if the transaction constituting the offense extends through different counties, the county in which the conversion took place has not the exclusive jurisdiction. 1 Bishop, New Criminal Procedure, 61; 7 Ency. Pl. & Pr. 412."

Thus, when the crime consists of a series of acts the place where the actual conversion took place does not have exclusive jurisdiction for if the evidence is such that a jury could find the intent to convert to his own use existed from the beginning then the defendant could be held in the county where the bailment took place. See Severin v. State, 146 Neb. 506, 20 N. W. 2d 377. In this case the jury determined that was Hall County. Therefore, if the intent to convert these funds to his own use with the intent to steal the same existed in Hall County, where he took possession of the draft and travelers' checks as bailee, he could be prosecuted in that county although he subsequently caused other acts to be done in Buffalo County such as having the complaining witness endorse and cash them. There is ample evidence in the record to sustain such a finding, in fact, it is about the only one the jury could arrive at.

We find the evidence is sufficient to establish all of the essential elements of the crime beyond a reasonable doubt. Thus, the court did not err in overruling the defendant's motion to dismiss count two. We also find that the crime was properly prosecuted in Hall County.

Defendant further complains that the court erred in admitting certain testimony over his objection. This particularly relates to the $1,700 and $200 customers' drafts which have already been referred to. We held in Hameyer v. State, 148 Neb. 798, 29 N. W. 2d 458, that: "Where guilt of a defendant depends upon the intent, purpose, or design with which the act was done, or upon guilty knowledge thereof, collateral facts in which he bore a part occurring before and leading up to the transaction complained of may be examined for the purpose of establishing such guilty intent, design, purpose, or knowledge, even though such facts show the commission of another crime." See, also, Adams v. State, *supra*. This contention is without merit.

As to the defendant's contentions that there was error in the giving of instructions Nos. 3, 4, and 11½, we have examined all of the instructions, including the three complained of, and think they come within the rule that we have so often announced, namely: "Where instructions, considered as a whole, state the law fully and correctly, error will not be predicated thereon merely because a separate instruction, considered by itself, might be subject to criticism." Fullerton v. State, 148 Neb. 811, 29 N. W. 2d 618. However, we will separately discuss the three instructions complained of.

Instruction No. 3 submitted to the jury the essential elements of the crime charged and required the State to prove them beyond a reasonable doubt before the defendant could be found guilty. This instruction fully complied with the statute to which it relates, that is, section 28-540, R. S. 1943, and which has hereinbefore been fully discussed. We find no error in this instruction.

Instruction No. 4 correctly states the statutory elements of the crimes charged in counts one and two. As stated in Alt v. State, 88 Neb. 259, 129 N. W. 432: "In a criminal prosecution, the trial court in giving instructions may describe the offense in the language of

the statute." See, also, Harrison v. State, 133 Neb. 794, 277 N. W. 96.

The principle stated in instruction No. 11½ has been sufficiently answered in this opinion as it relates to the facts and crime here charged. It was properly given.

The sentence imposed is the maximum provided by the statute. Defendant contends this is excessive and asks us to reduce it under the authority provided by section 29-2308, R. S. 1943. There is nothing in this record that would lend itself to leniency. It is hard to conceive how a man, in so short a time, could so completely cast aside the moral code of civilized society and violate so many laws that have been enacted to safeguard it. We do not think the sentence excessive.

After careful consideration of the entire record we find the conviction and sentence should be affirmed.

AFFIRMED.