STATE OF IOWA V. N. J. HENGEN, Appellant.

**Embezzlement: VENUE.** Defendant living in P. county, contracted with an installment house doing business in that county to travel and sell goods for it, for which he was there to account.   The goods were sent from P. county to the defendant in other counties, and there sold, and the proceeds converted.   *Held*, that the venue of a prosecution for embezzlement was properly laid in P. county.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FRIDAY, DECEMBER 16, 1898.

THE defendant, indicted for and convicted of the crime of embezzlement, appeals.—*Affirmed.*

*Spurrier & Maxwell* for appellant.

*Milton Remley*, Attorney General, for the State.

LADD, J.—The evidence tended to show that Pattee, as manager of the installment house of W. A. Edwards, of Des Moines, in Polk county, and the defendant, there entered into an oral contract by the terms of which the latter agreed to travel and sell goods for Edwards in certain counties of Iowa other than Polk, and to account or report to Edwards at Des

Moines by mail every Saturday night, and inclose therewith the leases taken for goods sold or cash received therefor. These leases ran from Edwards to the purchaser, permitted payment in installments, and were conditioned that title should not pass until the price was fully paid. Some of the goods were delivered by Pattee to the defendant at Des Moines; others —and most of them—were shipped to him in Dallas, Boone, and Carroll counties, and from these localities he made reports at different times. The general agent demanded an accounting in Carroll, and also in Dallas county. This the defendant failed to make, and insisted on making settlement with Pattee at Des Moines. When he reached Des Moines, he was unable to account for the property received. The evidence tends to show that he appropriated goods of Edwards, delivered or sent to him, valued at two hundred and thirteen dollars. If it be conceded that the goods were delivered by Edwards to the defendant as his agent in Polk county, or were sent from there to him elsewhere, and upon the agreement that he was to account for them to Edwards, in Polk county, and he failed to do so when this was demanded, and it appears that he fraudulently converted the same to his own use by selling and appropriating the proceeds in some other county, had the district court of Polk county jurisdiction to try him for such offense? In other words, was the venue properly laid in Polk county? Our statute provides that "when a public offense is committed partly in one county and partly in another, or when the acts or effects constituting or requisite to the consummation of the offense occur in two or more counties, jurisdiction is in either county, except as otherwise provided by law." Code, section 5157. The venue can always be laid in the county where the conversion actually took place, but it is often as difficult to determine where as it is when that happened. This is especially true of an agent who travels as salesman from town to town through several counties. The authorities agree that, if the transaction constituting the offense extends through different counties, that in which the conversion took place has not the exclusive juris-

diction. 1 Bishop Criminal Procedure, 61; 7 Enc. Pl. & Prac. 412. But, unless some essential element constituting the crime of embezzlement occurred in Polk county, the venue could not properly be laid therein. The establishment of the contract creating the fiduciary relation, and the duty to account for the property received, is quite as necessary for conviction as proof of the conversion. In *Reg. v. Murdock, Dennison & P.,* Crown Cas. 298, money was received by the accused in Derbyshire, though both parties lived at Nottingham. Upon inquiry concerning the money at the latter place, Murdock admitted having spent it, and the venue was held to be there; Talfourd, J., remarking: "My opinion is, the offense was completed when the prisoner refused to account to his master at Nottingham." In *Reg. v. Rogers,* 3 Q. B. 28, the sending of a letter by the defaulting employe, in effect denying the receipt of the money from another county, where he had collected it, to his employers, and its receipt by them in that in which it was his duty to account, and where both resided, gave jurisdiction in the latter county. In these cases the judges assigned different reasons for their conclusion, and, in the last, Huddleton, B. dissented. The demand and refusal must be regarded, however, only as evidence of conversion, and not essential to constitute the crime. *State v. Brooks,* 85 Iowa, 366; *Hollingsworth v. State,* 111 Ind. 289 (12 N. E. Rep. 490) ; *State v. Mims,* 26 Minn. 191 (2 N. W. Rep. 492). If this were not so, the offender might prevent the completion of the offense by flight. And it follows that, if the conversion is made complete by the appropriation of the property in one county, the mere demand and refusal would not add to it in any way, and thereby aid in conferring jurisdiction in the place of such demand. If there were no evidence of such a conversion elsewhere, it might be inferred to have been at the place where the demand is made, in event the duty to there account existed. *Reg. v. Murdock, supra*; *Campbell v. State,* 35 Ohio St. 70. In the last case the defendant was shown to have had the money of his principals in the county where it was his duty to account, and the fact that he expended it in

another county was held to be no defense. In *State v. Bailey,* 50 Ohio, 636 (36 N. E. Rep. 233) the defendant was employed by Hood Bros. Co., in Toledo, Lucas county, to sell goods for cash or on the installment plan in Fremont, San- dusky county, but to report in person or by letter to the firm at Toledo at the end of each week. Part of the goods were delivered to him in Toledo, and others sent to him at Fremont. After working some time, he caused a letter to be written and mailed to them, saying his sales were small; he was discour- aged, but would await their further orders. He had sold the goods on hand, and spent part of the proceeds there, and after- wards the remainder in Buffalo, N. Y., to which place he immediately absconded. The court, in holding the venue to be in Lucas county, said, through Bradbury, C. J.: "It is the defendant's duty to account, together with his neglect or refusal to do so, that constitutes the fraudulent breach of duty. A demand at a place when and where he owes no duty is, of itself, not enough. The defendant's obligation was to account to his employers at Toledo, in Lucas county. This obligation pressed upon him with equal force whether he was within or without the county. His refusal, neglect, or omission to dis- charge this duty may be as clearly manifested by silence and the circumstances of his absence, or by letter, as by spoken words, unless there is some magic in personal presence. That the presence of the offender within the county when a crime is committed is not always necessary to give jurisdiction is a settled principle. *Norris v. State,* 25 Ohio St. 217. The question is by no means free from difficulty, but we think the weight of authority, as well as of reason, authorizes us to hold that the making of the contract in Lucas county, the express duty it imposed upon the defendant to account weekly to his employer there, either in person or by letter, together with the fact that he did report to them falsely by letter, which they received, constituted such integral and essential parts of the transaction as entitle venue to be laid in Lucas county." The case at bar is like that from which we have quoted, and we are inclined to follow it. The defendant lives in Polk county,

where the contract was made, and from whence he received the property. He agreed to account to his employer at Des Moines. His failure or neglect or refusal to do so elsewhere would not amount to conversion, for he owed no such duty to his employer. That he fully realized this was shown by his insistency on settling with Pattee at Des Moines. Whether there or elsewhere, his obligation to account for the property at that place continued, and his failure to do so when then requested at that place was a clear breach of duty he owed to his principal. The existence of the contract, and the breach of the particular duty it imposed, were essential elements of the transaction constituting the embezzlement. See 7 Enc. Pl. & Prac. 412; *State v. Small*, 26 Kan. 209; *State v. Whiteman*, 9 Wash. 402 (37 Pac. Rep. 659); McClain Criminal Law, section 650. We do not overlook the case of *People v. Murphy*, 51 Cal. 376, announcing a contrary rule, but deem that adopted as having better support in authority and reason. The judgment is AFFIRMED.