## THE STATE v. FRANKE, Appellant.

Division Two, February 12, 1901.

1. **Burglary: STATEMENTS OF WIFE.** The policeman who made the arrest testified that he went to defendant's house and asked his wife where her husband was, informing her that he wanted him on police business, and she told him he was not there, that he was at her father's, and thereupon he entered the house anyhow, and then defendant walked out of another room. *Held*, that these statements of the wife were incompetent, but harmlessly so, since they did not incriminate the defendant.

State v. Franke.

2. **Verdict Sustained by Evidence:** IDENTIFICATION. The jury are triers of the facts in a criminal case, and although there may be evidence to warrant an acquittal, yet if there is evidence to sustain the issue joined, and the instructions are proper, the verdict is final. And this applies to identification of the defendant, as well as to any other fact.

3. ———: ———: FOUNDED ON BELIEF. It is not necessary that any witness should positively identify the defendant as the person who burglarized the house and stole the goods. The crime being admitted, and the only question before the jury being whether the defendant was the person in the wagon in which the burglar escaped, it is sufficient if the witnesses believe that the person they saw was · defendant.

4. **Instructions.** Where the instructions given are correct and fully cover the case, it is not error to refuse defendant's instructions.

5. **Burglary:** STEALING GUN: GUILTY INTENT. Evidence which shows that a gun found hidden between the laths and rafters of defendant's house two or three days after his arrest, was, shortly before a burglary was committed, stolen from the house of a neighbor only a quarter of a mile from the burglarized house, at which neighbor's defendant had been working, is competent as showing the guilty intent of defendant.

Appeal from Buchanan Criminal Court.—*Hon. B. J. Casteel,* Judge.

AFFIRMED.

*Ferrell & Zwick* for appellant.

(1) The court erred in permitting the State to introduce evidence concerning a certain shotgun, supposed to have been stolen from one D. A. Turner, which was found on the premises of the defendant. The effect of the evidence was to present to the jury testimony relating to another offense and to an entirely different transaction, which prejudiced the minds of the jury against the defendant in reference to the charge for

which he was on trial.   State v. Young, 119 Mo. 495; Barton
v. State, 18 Ohio 221; State v. Kelley, 65 Vt. 531; Endaily v.
State, 39 Ark. 278; People v. Hartman, 62 Cal. 562; State v.
Riavis, 71 Mo. 419; State v. Kelley, 18 Tex. App. 262; State
v. Goetz & Martin, 34 Mo. 85; Gilbraith v. State, 41 Tex. 567;
People v. Tucker, 104 Cal. 440; People v. Sessions, 10 Hun.
158; State v. Daubert, 42 Mo. 242; Walker v. Com., 1 Leigh
(Va.), 574; 1 Greenleaf on Evidence, sec. 53.   (2) The court
erred in admitting testimony of certain utterances made by the
wife of the defendant on the occasion of his arrest.   Such evi-
dence was clearly hearsay and contrary to the elementary rules
of evidence.   1 Greenleaf on Evidence, sec. 124; Dunn v. Alt-
man, 50 Mo. App. 231; State v. O'Connor, 105 Mo. 121.
(3) (a.) The court erred in refusing to instruct the jury as to
the defense of an *alibi*, as asked for in the defendant's fifth
instruction.   The evidence on the part of the defendant tends
to show that he was at another place than the scene of the crime
at the time of its commission.   State v. Edwards, 109 Mo.
315; State v. Crowell, 149 Mo. 391; State v. Taylor, 118 Mo.
153; State v. Sidney, 74 Mo. 390.   (b.) The court erred in
refusing to grant defendant's sixth instruction.   State v. Wool-
ard, 111 Mo. 248; State v. Waterman, 1 Nev. 543.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*,
Assistant Attorney-General, for the State.

(1) The double-barrel gun, which had dissappeared from
the house of one D. A. Turner, was found in the house of the
defendant.   It was not connected with the crime charged in the
indictment; but the fact of its being·found in defendant's pos-
session raised a presumption that he had stolen it from the
house from which it had been taken until such possession was
explained by him.   Evidence of this theft by the defendant in

the same neighborhood where the burglary was committed for which he was indicted, and near the same time, was competent and proper for the purpose of showing a system of burglaries and the means and methods used by the defendant. State v. Balch, 136 Mo. 109. (2) There was no error in the admission of evidence as to the statements made by the wife of appellant, because the witness testifying to such statements stated that they were made in loud tones, so that appellant, who was in the next room, could hear. (3) Instruction 7 fully and properly states the law on the question of *alibi.* The statement that the doubt "must be a substantial doubt, founded on the evidence, and not a mere possibility of the defendant's innocence" does not constitute error. State v. Good, 132 Mo. 114; State v. Davidson, 44 Mo. App. 513.

SHERWOOD, P. J.—Burglary and larceny the charge, resulting in a bifurcate verdict, one branch of it finding defendant guilty of burglary in the second degree and awarding as punishment three years in the penitentiary, the other finding him guilty of larceny and assessing his punishment at two years in the same place.

The house of Mrs. Mary A. Korf, who lived about five miles south of St. Joseph, was burglariously entered on the afternoon of the sixth of November, 1899, while Mrs. Korf was temporarily absent, and a watch and some jewelry stolen from the house. Returning home shortly afterwards, Mrs. Korf discovered her loss and informed her neighbors, who started in search or chase of the thieves, and it seems that they were pursued before they had both reached their conveyance, a road wagon drawn by a sorrel horse. The one thus pursued threatened his pursuers with a gun and in this way was enabled by cutting across fields to rejoin his fellow-thief and this being done they put whip to their horse whose head was

turned northward toward St. Joseph, and he went along at a rapid rate with the neighbors in pursuit, when a horseman, one of the pursuers, was fired on by one of the occupants of the vehicle, and some of the shot struck in the road only a few feet from the mounted pursuer.   The firing of this shot somewhat checked the pursuit, and enabled the pursued to get such a start as enabled them to reach South St. Joseph before they were sufficiently hard pressed to compel them to leave their road wagon and seek safety in flight.   On the way to that point, as well as on their outward-bound trip, defendant was seen and recognized by three or four persons and that he and the one with him had a single-barrel shotgun between them in the conveyance.

The occupants of the road wagon abandoned it, it seems, in the vicinity of the stock yards.   When their conveyance was searched by the authorities, two overcoats, one a blue one, in the pockets of which were found several loaded shells and one or two empty ones, and a single-barrelled gun, loaded, were found and about two dozen loaded shells of the same calibre were found in defendant's house in a kitchen safe on the night of the arrest.   When arrested and brought to the police station, defendant openly admitted that the blue overcoat was his; but being privily asked by a reporter for a newspaper who had heard the just-mentioned admission, stated the coat was not his "exactly," but that he had "worn it lots of times." Several persons, among them policemen, stated that during the two or three years next preceding the date of the burglary, they had frequently seen defendant wearing the blue overcoat.   The road wagon and the sorrel horse were shown to belong to defendant's brother, and defendant and Ramsey, or "Dutch Red" his companion, and who was indicted with him, but made his escape, were seen in the road wagon, having a shotgun, and a sorrel horse hitched to the wagon, and that this was about 1 or

1:30 in the afternoon of the day the burglary was committed, and was close to Jack and Al's saloon, near where defendant's brother had a shoemaker's shop. Defendant and the other occupant of the road wagon then drove off in a southerly direction. Defendant states he only went as far as a piece of work he wanted to look at, and then got out, and let his companion go on without him. The same reporter states that at defendant's house on the evening of the sixth of November, defendant admitted to him, or in his presence, that he had been working laying bricks all day until 2 o'clock, when he went hunting. There was also testimony showing that defendant had worked for D. A. Turner who lived about a quarter of a mile from Mrs. Korf's house, and that defendant had picked apples for him four or five days beginning about the fifteenth of October or a little later next preceding the burglary; that at that time Turner had a double-barrelled shotgun, number 12 calibre, which was in the rooms his boys usually slept in in warm weather; that this gun remained there as late as the twenty-fourth or twenty-fifth of October, but disappeared from his house between the date last mentioned and the date of the burglary, and was subsequently found in defendant's house, on the eighth or ninth of November, between the laths and the rafters. One of the triggers of this gun had been repaired with a small piece of brass which made and marked its identity very conspicuous.

Henry Frans, a policeman, who assisted in making the arrest, was testifying, when the following occurred:

"Q. What did you find at the house?

"A. I asked defendant's wife if Mr. Franke was at home, and she said he was not, and I said I would like to see him on police business, and she said if I wanted him I could go to her father's; and I insisted on seeing if he was there, and she said there was no use of bothering her and the children; and in

State v. Franke.

the meantime, I walked in, and while I was in there Mr. Franke walked out of another room—Mr. Franke came out of an adjoining room while I was talking to her."

[The defendant objected to the foregoing evidence as to any statements the witness attributed to Mrs. Franke on the ground that her statements are hearsay evidence and are incompetent as against defendant and because said statements are not shown to have been made in his hearing or presence, and defendant moved the court to strike out said evidence. The court overruled said objection and said motion to strike out. To which action in overruling said objection and said motion, the defendant at the time duly excepted.]

The foregoing statement in brackets was interlined in manuscript in the statement in regard to defendant's wife.

"The court: Of course, there is no objection made to this; but it is incompetent testimony."

1.   This excerpt from the bill of exceptions is passing strange, and utterly contradictory. The court says, "There is no objection made to this," and yet it seems, if interlineations are to count, that there was objection made to the evidence just above set forth.

Either the judge through inadvertance permitted those interlineations to be made before signing the bill, or else they were subsequently made without his consent.

But however that may be is wholly immaterial, inasmuch as the wife's statements did not tend to incriminate her husband. It is true that her statement as to her husband's absence from the house was false, but its falsity became apparent when her husband became apparent by walking in from another room. The testimony as to Mrs. Franke's statements was incompetent, but harmlessly so.

2.   There was testimony on the part of the defense to have warranted the jury in finding a verdict in his favor, but

the jury were the appointed triers of the facts and of the issue joined, and unless misinstructed and exception saved, that verdict is final.   And certainly there was much evidence, as already related, to warrant the jury in finding as they did.

It was by no means necessary that any of the witnesses should positively identify defendant as the one they saw passing by in the road wagon. It sufficed that the witnesses believed that the person they saw was defendant.   In a case which arose in Massachusetts, the witnesses would not swear that the prisoner was the same man they saw on the wagon driving it off; but that "he resembled him."   This testimony was given in a case where the prisoner was charged with larceny of the wagon and also of the horse hitched thereto; and it did not appear that they had ever seen or known the prisoner before, and the sole question in controversy before the jury was whether the prisoner was the person who stole the wagon.   Upon this state of facts, the defendant asked the court to instruct the jury "that as no witness sworn in the case had given evidence that the defendant was the man who committed the crime set forth in the indictment, or the man who was seen in the possession of the stolen property, the jury would not be justified to find the defendant guilty."   But this instruction was refused and one given by the trial court in accordance with the views announced by the Supreme Court.   That court said:   "Upon this question of identity, the evidence offered was all of it competent, and proper for the consideration of the jury.   It is impossible to say that it had no tendency to convict the defendant.   Its sufficiency was to be estimated and weighed exclusively by them.   It is not necessary that any one witness should distinctly swear that the defendant was the man, if the result of all the testimony, on comparison of all its details and particulars, should identify him as the offender."   [Com. v. Cunningham, 104 Mass. 545.]

To the like effect, see Greenwell v. Crow, 73 Mo. 638;

State v. Franke.

State v. Babb, 76 Mo. 501; State v. Weber, 156 Mo. 249; 1 Greenleaf, Evid. (16 Ed.), sec. 440; Stark, Evid. (10 Ed.), 173.

But Mrs. Adcock testified as to defendant's identity with almost positive directness.  She had previously identified him at the police station, and she identified him when on the witness stand.  Her story about the matter is substantially this:  She had seen defendant before at her house some four and one-half miles south of St. Joseph in the Turner neighborhood; he was picking apples and came to her house one morning, and ate dinner.  On the afternoon of November 6, 1899, about half past four o'clock, she was standing on the east side of the road which runs north and south there in front of her house; there she saw two men in a buggy drawn by a sorrel horse going north as fast as the horse could go; they had a gun between them in the buggy; defendant was on the side of the buggy next to her, and when he noticed her observing him, pulled down his hat and turned away his head, and a man on horseback, apparently in pursuit, was coming on behind the buggy.  Asked by defendant's counsel: "Are you absolutely sure that you saw the defendant at that time, without any doubt whatever?" she answered, "I firmly believe I did."

3.   The instructions in this case including the subject of *alibi*, were such as have frequently received the sanction of this court, and fully covered the case.   This fact makes it unnecessary to discuss the refusal of defendant's instructions.

4.   Relative to the admissibility of evidence respecting the Turner double-barrelled gun; that gun was stolen from Turner's house, only about a quarter of a mile distant from Mrs. Korf's, between the twenty-fifth of October and the sixth of November.   This evidence was competent as showing the guilty intent of defendant.   [State v. Balch, 136 Mo. loc. cit. 109, and cases cited.]

For these reasons, judgment affirmed.   All concur.