JUDGE P. COHOE V. STATE OF NEBRASKA.

FILED DECEMBER 5, 1908.   No. 15,780.

1. **Information:** ELECTION. Where it is doubtful whether an alleged offense is larceny or conversion by a bailee with intent to steal, the information may contain two counts, one charging the felonious taking, the other the felonious conversion, and the state will not be required to elect upon which count it will rely for a conviction.

2. **Criminal Law:** LARCENY AS BAILEE: VENUE. In a prosecution for larceny of money by a bailee, where the transaction constituting the offense extends through different counties, the venue may be laid and the prosecution had in the county where the bailment arose, and where the defendant has to account for and pay over the money on demand to the one entitled to its possession.

3. ————: CONFESSIONS. A voluntary confession of a defendant is competent evidence in a criminal case, and may, with even slight

corroborating circumstances, be sufficient to establish the *corpus delicti.*

4. ———: LARCENY AS BAILEE: EVIDENCE. In a prosecution for the crime of larceny of money by a bailee, evidence that the accused obtained other sums of money in like manner and about the same time, and the disposition he made of such money, may be received, as tending to show his guilty knowledge and intent.

5. Larceny as Bailee: EVIDENCE. Evidence examined, its substance stated in the opinion, and *held* sufficient to sustain the verdict.

ERROR to the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Affirmed.*

*E. B. Quackenbush,* for plaintiff in error.

*William T. Thompson, Attorney General, Grant G. Martin, H. A. Lambert* and *E. Ferneau, contra.*

BARNES, C. J.

The plaintiff herein, who was the defendant in the district court, and will be so designated, was convicted of the crime of larceny as bailee, and has brought the case here for review.

It appears that the information on which he was tried contained two counts; one charging him with the larceny of $1,000 in gold, under the provisions of section 114 of the criminal code, and the other charging him with the larceny of the same money as bailee, as defined by section 121b of the criminal code. At the close of the state's evidence the defendant moved to require the prosecutor to elect upon which of the counts he would rely for a conviction. The motion was overruled, and this ruling is assigned as error. The defendant contends that the information charged him with two separate and distinct felonies, based on two different sections of the statutes, which denounce different crimes inconsistent and repugnant to each other, and that it was prejudicial error to try him upon both of those counts at the same time, for the reason that in a felony case "only a single issue will

be permitted to go to the jury." This contention is presented by defendant's counsel in his argument and brief with much skill and unusual ability. Without doubt the general rule is that a defendant in a felony case should not be tried upon two distinct and separate charges, and that only a single issue should be permitted to go to the jury. But to this rule there are some exceptions, as we shall presently see. Where the same act constitutes different offenses, the rule is that they may be charged in separate counts in one information, and it is competent and proper "to vary the charge by means of several counts, when the offense is the same, for the purpose of meeting the different phases of the evidence which may be adduced at the trial." 10 Ency. Pl. & Pr. 543. Every cautious pleader will insert as many counts as will be necessary to provide for every possible contingency in the evidence, and this the law permits. Wharton, Criminal Pl. & Pr., sec. 297; *Furst v. State,* 31 Neb. 403. The right to require the prosecutor to elect is confined to cases where the information or indictment contains charges which are actually distinct, and which grow out of different transactions, and the court will not compel the prosecutor to elect where it appears by the indictment that the charges relate to the same transaction modified to meet the proof. *Candy v. State,* 8 Neb. 482. In the case of *Butler v. State,* 91 Ala. 87, the defendant was charged in one count of the indictment with the larceny of a horse, and in another count with the fraudulent conversion of the same horse. The court held that the two counts were properly joined, and that the defendant has no legal right to compel the state to elect upon which it would ask a conviction. In the opinion it was said: "The court will not exercise its power to compel an election, unless it appears, either from the indictment or the evidence, that an attempt is made to convict the accused of two or more offenses growing out of separate and distinct transactions." In *Commonwealth v. Shutte,* 130 Pa. St. 272, 17 Am. St. Rep. 773, the indictment contained two counts; one charging

robbery, and the other larceny as bailee.  The defendant was acquitted of the charge of robbery, and convicted of the charge of larceny as baileee.  Both charges in the indictment related to the same property, and to one and the same transaction.  The defendant there contended that the two charges were improperly joined, and the court in passing on the question said: "Nor do we think there was a misjoinder.  While the evidence is not given, it is manifest that both counts were for substantially the same offense.  The higher offense was not proved but the defendant was convicted of the larceny as bailee of the same property referred to in the first count.  The offense charged in the second count was not repugnant to that charged in the first.  It was a constitutent part of the same offense."  It has been held that, where it is doubtful whether an alleged offense is larceny or a conversion of property by a bailee with intent to steal, the indictment may contain two counts; one charging the felonious taking, and the other the felonious conversion.  *People v. Bogart,* 36 Cal. 245.

In the case at bar it appears from the evidence that one Ulbrich had, before the time alleged in the information, been found insane, and one Boyd had been appointed his guardian.  Ulbrich, shortly before his insanity, had sold property and received several thousand dollars therefor.  The guardian was unable to find the money which it was supposed Ulbrich possessed.  It was believed that he had concealed it upon his premises in Auburn, where he resided at the time he became insane.  The defendant rented the premises of the guardian, and was living there with his family at the time of the transaction complained of.  It is conceded that the defendant found the money, which he is charged with having stolen, upon the premises in question; that soon after finding the gold he took it to Nebraska City, squandered part of it, then went to Omaha, afterwards returned to Auburn, and stated that he had lost all the money while drunk, except $145 in gold, which he returned to the guardian.  He

claimed that he had been authorized to take possession of the gold, and that his wrongdoing consisted in not returning it to the guardian as he had been instructed to do. The prosecution also claimed that he had no authority to take possession of the gold, but that it was his duty, if he found it, to inform the guardian, and there is some evidence tending to support this contention, and that he intended from the first to find it, if he could, and convert it to his own use. It appears, however, that upon a former occasion he reported that he had found $50 upon the premises, and had returned it to the guardian and received a reward therefor. Later he reported to the guardian that he had found some money, but his statements in regard to it and in regard to the amount that he had found were confusing and evasive. He first reported that at this second finding the amount was $800, but afterwards admitted that it was $1,800, and finally, after much hesitancy and quibbling, gave the $1,800 to the guardian. He demanded a share of this money for his services, and was allowed a liberal reward. On the other hand, there is clear and substantial evidence in the record that the defendant was authorized and instructed by the guardian to look out for hidden money while he was making certain repairs on the premises, and, if he found it, to deliver it to him. It appears that the guardian rented the place to the defendant at the agreed price of $100 a year; that the defendant was to pay for the first six months' rent by labor on the place, and the next six months he was to pay cash. The guardian testified that, "when (the defendant) started to fix up this place, I told him to be particularly careful when he changed anything in the way of plastering and cupboards or boards, or anything of that kind; that I thought Ulbrich had hidden some money there, and, as I was unable to find anything up to that time, I wanted him to be particularly careful and make a thorough search for it." It appears that when the defendant found the $1,800 he went with the guardian to the county judge, and he was instructed by them that, if he found any more

money there, he should bring it either to Mr. Boyd or the county judge at once and turn it over to them. They both testified that the defendant promised he would do so; that they repeated the injunction to him several times, and cautioned him about it, saying: "If you find any more money down there, you bring it to us." They further testified that he promised he would do so. They said "he not only promised he would, but appeared sincere in it." After these instructions, it appears that the defendant found $1,000 in gold, which is the money in question, and disposed of it in the manner above described. It can readily be seen that the prosecutor, in order to meet this state of the evidence, deemed it necessary, as a matter of precaution, to charge the offense in the two counts set forth in the information. We think he was justified in pursuing that course, and the district court did not err in refusing to require him to elect upon which count of the information he would rely for a conviction.

Defendant further contends that the judgment should be reversed because of the refusal of the district court to instruct the jury, in substance, as follows: You are instructed that, before you can find the defendant guilty, you must find from the evidence beyond a reasonable doubt that he took the money as charged in the information in Nemaha county; that he formed the felonious intent to permanently deprive the owner thereof while he was yet in Nemaha county; and, if you believe from the evidence in this case that such felonious intention was formed in Otoe or any other county in this state than Nemaha, and that said money was converted in some other county than Nemaha, or, if you entertain a reasonable doubt as to where such felonious intent or conversion took place, you should give the defendant the benefit of that doubt, and find him not guilty. In considering this contention, we find from the record that paragraph six of the instructions given by the court on his own motion states the law applicable to the facts of this case, and therefore defendant cannot complain of the refusal of his request.

Furthermore, we are of opinion that the instruction tendered is not a correct statement of the law. Like questions have been decided by many courts of last resort, and it is said in their opinions that it often appears that the venue cannot be laid in the county where the conversion actually took place. We think the authorities agree that, if the transaction constituting the offense extends through different counties, the county in which the conversion took place has not the exclusive jurisdiction. 1 Bishop, New Criminal Procedure, 61; 7 Ency. Pl. & Pr. 412.

The agreement creating the fiduciary relation in the case at bar was made in Nemaha county. The money was found by the defendant and taken into his possession in that county, and it was his duty to account for it and pay it over to the guardian of the owner in that county. We think it may be safely said that the crime charged in the second count of the information was not complete until the defendant failed or refused to turn the money over to the guardian on demand in that county. In *Regina v. Murdock*, 2 Den. & P. (Eng.) 298, the money was received by the accused in Derbyshire, though both parties lived at Nottingham. Upon inquiry concerning the money at the latter place, Murdock admitted having spent it, and the venue was held to have been properly laid there; Tolfourd, J., remarking: "My opinion is that the offense was completed when the prisoner refused to account to his master in Nottingham." In *Queen v. Rogers*, 3 Q. B. Div. (Eng.) 28, it was held that the signing of a letter by the defaulting employee, in effect denying the receipt of the money from another county where he had collected it, to his employers, and its receipt by them in the county where it was his duty to account, and where both together resided, gave jurisdiction in the latter county. If this were not so, an offender might prevent the completion of his offense by flight, and the result of the defendant's contention, if carried to its legitimate conclusion, would render it impossible to convict him of any offense in any county whatsoever.

In *Campbell v. State*, 35 Ohio St. 70, an agent was prosecuted for the embezzlement of his employer's money in a certain county where he had possession of it, and in which it was his duty to account to his employer upon demand being made. It was held to be no defense to show that he had expended the money for his own use in another county. In *State v. Bailey*, 50 Ohio St. 636, the defendant was employed by a firm in Toledo, Lucas county, to sell goods for cash, or on the instalment plan in Fremont, Sandusky county, and he was to report in person or by letter to the firm at Toledo at the end of each week. Part of the goods were delivered to him in Toledo, and others sent to him at Fremont. After working some time he caused a letter to be written and mailed to the firm, saying that his sales were small and he was discouraged, but would await further orders. He had sold the goods, however, and spent part of the proceeds in Fremont, and afterwards the remainder in Buffalo, New York, to which place he had absconded. It was held that the venue was properly laid in Lucas county; that defendant's obligation was to account to his employers at Toledo, in Lucas county, and this obligation pressed upon him with equal force whether he was within or without that county; that the presence of the offender within the county when the crime is committed is not always necessary to give jurisdiction. This is the rule announced in *Norris v. State*, 25 Ohio St. 217, and *State v. Hengen*, 106 Ia. 711.

As above stated the defendant and the guardian, Boyd, both resided in Nemaha county. The agreement assented to by defendant by which he was to turn over any money found by him to Boyd or the county judge was made in that county. It also appears beyond any reasonable doubt that the money in question was found by the defendant on Ulbrich's premises, in Nemaha county, and it was his duty to account for it and turn it over to the guardian in that county. It follows that the crime for which he was convicted was not complete until his failure or refusal to turn over the money on demand in that county. Therefore

the district court did not err in refusing to instruct the jury as requested.

Defendant also contends that the verdict is contrary to law, and is not sustained by sufficient evidence. He argues that the *corpus delicti* was not proved by competent evidence. As above stated the record shows that the money in question was found on Ulbrich's premises. There is evidence that he was possessed of a considerable amount of money, and that it was his habit to hide it about his premises. In addition to the defendant's admission that he found the money buried there, the evidence discloses that he was in possession of it at Nebraska City, and spent at least a part of it there; that he went to Omaha and gave or delivered $350 of it to his son, William Cohoe; that the money spent at Nebraska City and the money delivered to his son William was tarnished, and had the appearance of having been buried. The defendant also brought and delivered $145 of the same kind of money to the guardian. This was a sufficient corroboration of the voluntary confession of the accused to establish the *corpus delicti*. A voluntary confession of a defendant is competent evidence, and may, with slight corroborating circumstances, establish the *corpus delicti*. *Sullivan v. State*, 58 Neb. 796. It has been often held that the *corpus delicti* in larceny, like other facts in general, may be established by circumstantial evidence. 18 Am. & Eng. Ency. Law (2d ed.), 483; *Campbell v. People*, 159 Ill. 9, 50 Am. St. Rep. 134; 4 Elliott, Evidence, sec. 3053. We are therefore of opinion that this contention is without merit.

Defendant insists that the court committed reversible error in permitting the state to prove the finding of other money and attempts to commit other crimes. The record contains no evidence showing or attempting to show that the defendant had committed any other crimes. The testimony objected to simply proved that the defendant, when he found other money under similar circumstances, turned it over to the guardian as the money of Ulbrich,

and promised the county judge that, if he found any more money, he would make the same disposition of it. The evidence of those transactions was admissible to show the defendant's knowledge and his intentions when he took possession of the gold and carried it to Nebraska City.

Another contention is that the court committed reversible error in permitting the evidence of the witness Young with reference to a certain gold certificate and its condition to go to the jury without connecting the defendant with it in any way. While it is true that this evidence was immaterial, yet there was nothing in it that could have operated to the prejudice of the defendant in any manner whatsoever.

Finally, it is claimed that the verdict is not sustained by sufficient evidence, and is against the clear weight of the evidence; and it is contended that at the time of the alleged conversion the defendant by reason of intoxication lacked the capacity to form or entertain a felonious intent. While it is shown that after the defendant left Auburn, and while on his way to Nebraska City, he became somewhat intoxicated, and that he was in that condition when he was gambling and spending the money in question at Nebraska City, and that he was partially intoxicated when he reached the city of Omaha, still the evidence is insufficient to show that he was unconscious of his situation or his whereabouts, or that he did not know what he was doing, and did not realize the effect of his conduct at any time while he was absent from Nemaha county on that occasion. We find that this question was fairly submitted to the jury upon the evidence, and by an instruction given by the court for that purpose, and was resolved against the defendant. A careful reading of the whole record satisfies us that the evidence was amply sufficient to sustain the verdict and establish the defendant's guilt beyond a reasonable doubt.

51

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.