WILLIAM WELTER V. STATE OF NEBRASKA.

FILED APRIL 10, 1924. No. 23305.

1. **Criminal Law:** WEIGHT OF EVIDENCE: QUESTION FOR JURY. Where a witness for the state in a criminal prosecution has been impeached, it is for the jury to determine the probative value of his evidence.

2. ———: PROOF: QUESTION FOR JURY. Two stores, in close proximity, were burglarized in the same village during the same night. Defendant was informed against and convicted of having committed one of the burglaries. Part of the goods, stolen from the burglarized stores, were found in his possession the following day and some a few days thereafter. *Held*, that it was for the jury to determine whether proof of the burglary for which defendant was not indicted, tended to prove the commission of the burglary for which he was indicted.

3. ———: EVIDENCE OF ANOTHER CRIME: ADMISSIBILITY. The general rule is the evidence of the participation by an accused person in the commission of a crime, other than that for which he is placed on trial, cannot ordinarily be admitted in evidence against him. But the rule has its exceptions which are as well established as the rule itself, and may be applied in a given case, not to establish the other crime but as confirmatory of the evidence tending to show the commission by defendant of the crime for which he is being tried.

4. ———: INSTRUCTIONS. "Before error can be predicated upon the failure to charge the jury upon a given point, there must have been a request therefor, unless it is upon a question where a statute or positive rule of law requires the giving of such instruction." *Georgis v. State*, 110 Neb. 352.

5. ———: WEIGHT OF EVIDENCE: QUESTION FOR JURY. Defendant introduced evidence tending to prove an alibi which, if believed by the jury, would have entitled him to an acquittal of

the crime with which he was charged. *Held*, that the probative value of such evidence is for the jury.

6. ————: REVIEW. As a reviewing court, we cannot, for obvious reasons, consider matter here which has not been first submitted in the trial court.

ERROR to the district court for Johnson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Jay C. Moore* and *Andrew P. Moran*, for plaintiff in error.

*O. S. Spillman, Attorney General*, and *Harry Silverman, contra.*

Heard before LETTON, ROSE, GOOD and DEAN, JJ., and ELDRED, District Judge.

DEAN, J.

William Welter, plaintiff in error, hereinafter designated defendant, and Jacey Banker, were jointly informed against in the district court for Johnson county and there charged with having burglariously entered the general merchandise store of Frank Eversole, in the village of Elk Creek, in the nighttime of October 12, 1922, and of having stolen therefrom certain men's and women's wearing apparel and a quantity of tobacco and cigars, the property of Eversole, in excess of the value of $100. The defendants were tried separately. The defendant herein was convicted of larceny and the value of the property alleged to have been stolen was fixed by the jury at $100. Welter was sentenced to the state reformatory for a term of not less than three years nor more than six years. He prosecutes error to this court to have the record reviewed.

On the same night that the goods were stolen from the Eversole store a quantity of goods, of the value of more than $100, was stolen from the hardware store of Beethe Brothers, in the same town, consisting of rifles, shotguns, a large quantity of shells, some silverware, automobile casings, or tires, and the like. The stores fronted on the

same street and were only about two doors apart. Apparently the front doors of both buildings were pried open by the same pinch-bar and in substantially the same manner.

Subsequently nearly all the goods taken from the Eversole store were found secreted at different places on a farm in Otoe county on which a man named Roy Babcock lived. Some were found in a smokehouse and other farm buildings, some were found buried in tin cans on the premises, and some were found in a tool-chest on a porch of the farmhouse. But a bundle of gloves was found in a cupboard in the Welter home which Eversole identified by the cost marks which he had made and attached to, the goods while they were in his store. As tending further to establish defendant's participation in the Eversole burglary, four witnesses testified, on the part of the state, that they saw and talked with Welter after the gloves were found in his house, and that he stated to each witness that the gloves were his and that he bought them at Smith's store in the village of Paul. But Welter testified that he never saw the gloves on his place and did not know they were there. Mr. Eversole, or one of his clerks, testified that defendant came to the store October 11, and asked to be shown a leather jacket, some shirts and other articles, but left without making a purchase. It appears that the same class of goods which were shown to Welter, on his request, were afterwards recovered among the stolen goods found on the Babcock place. One or more witnesses testified that they saw Welter and Jacey Banker and a man named George Kriefels driving into Elk Creek in a car the morning of October 11, and that Welter and Kriefels together entered the Eversole and the Beethe stores, but that Jacey Banker remained in the car. It was also shown that a somewhat unusual car track was found on the streets of Elk Creek the day after the theft which was the same as a track made by a tire on a rear wheel of Welter's car.

Roy Babcock, at whose place the goods were found, was a witness on the part of the state. His material testimony in substance is that, the day after the goods were stolen,

the defendant and Jacey Banker passed his place in a car about four or five o'clock in the afternoon; that Welter called out and asked him if he found the things that he left on his place; that he replied that he had not; that Welter then told him he would find plenty of tobacco and cigars and to help himself; that he subsequently found cigars, tobacco and some other things in his granary. He testified that he did not tell the sheriff about finding the tobacco and cigars until after the other goods were found on his place by the officers, because defendant and Banker threatened to shoot any person who informed against them. Three or four qualified character witnesses called by the defendant testified that Babcock's reputation for truth and veracity in his home vicinity was bad. But his testimony, in its material features, was corroborated, in part at least, by unimpeached witnesses. From the record it appears that Babcock had not been complained against at the time this case was tried.

It may be added that Babcock also testified that when defendant and Jacey Banker passed his place, on the day following the burglary, as above noted, they had several guns and perhaps some ammunition in the car. Subsequently the guns were identified as having been taken from the Beethe store.

Babcock also testified that he again saw defendant and Kriefels October 22, the Sunday following the burglary, and that they had six or seven guns in the car, and that one, which he picked up, was a new one. He testified that the occupants of the car said they were on their way to Omaha and were in a hurry to reach their destination. Kriefels corroborated Babcock's evidence in that he testified that, on the Sunday in question, he and defendant went to Babcock's house, and when they left they drove a short distance and stopped and defendant got out and went into a field and returned with a sack or package which he threw into the car.

Defendant argues that the court erred in permitting evidence to be introduced which had to do with the larceny

of the Beethe goods.    But there was no direct evidence
of the value of the Beethe goods.    It is elementary that
a verdict of guilty would not be sustained in a larceny
case without such evidence.    Comp. St. 1922, sec. 10154;
*Hennig v. State,* 102 Neb. 271.

It is evident that both offenses are apparently parts of
the same transaction and tend to connect defendant with
the offense with which he is charged.    In many jurisdic-
tions where the same question was involved, it has
been held proper to permit the state to introduce
evidence of another burglary or theft, where both
offenses were substantially one transaction, and this
on the ground that whatever tended to show par-
ticipation in one was evidence of participation in
all.    It has been held generally that the proof, in such
case, is not given to show a different and distinct felony,
but because it tends to prove the felony under investiga-
tion and its tendency to that end is for the jury.

*People v. Mead,* 50 Mich. 228, is in point.    In that case
the defendant was convicted of breaking into a farmhouse,
in the open country, and committing a larceny therein.
There was evidence, to which defendant objected, going
to show that several houses in the neighborhood were
broken into the same night.    Among other things the court
said, speaking by Judge Cooley:

"The prosecution concede that, if it had no tendency
to connect the respondent with the particular offense for
which he was on trial, it should not have been received;
but their theory of the case was that the several burglaries
were all substantially one transaction, and whatever
tended to show participation in one was evidence of par-
ticipation in all.    We agree in this view.    The proof was
not given to show a different and distinct felony, but as
tending to prove the very felony then under investigation;
and its tendency to that end was for the jury."    To sub-
stantially the same effect is *Frazier v. State,* 135 Ind. 38.

"On the trial of a defendant for conspiracy to defraud
the United States of public lands, evidence that he had

previously been engaged in the illegal acquisition of public lands elsewhere by a different method was admissible as bearing upon the questions of intent, purpose, and design." *Jones v. United States*, 179 Fed. 584.

"Evidence which shows that a gun found hidden between the laths and rafters of defendant's house two or three days after his arrest was, shortly before a burglary was committed, stolen from the house of a neighbor only a quarter of a mile from the burglarized house, at which neighbor's defendant had been working, is competent as showing the guilty intent of defendant." *State v. Franke*, 159 Mo. 535.

"The test of the admissibility of evidence in a criminal case is the connection of the facts proved with the crime charged, and whatever testimony tends directly to show the defendant guilty of the crime charged is competent, even though it tends to show him guilty of another offense." *People v. Moeller*, 260 Ill. 375.

"The respondent was indicted for burglary. The evidence of the state tended to show that the respondent and two others went with respondent's team and stole certain sugar from the dwelling of one Damon; that one of the three remained with the team while the other two entered the house and took the sugar. Held, that the state might show that before going to Damon's and while on their way there the three stole sugar at another place." *State v. Valwell*, 66 Vt. 558.

*Moore v. United States*, 150 U. S. 57, is a case where the defendant was convicted of the murder of a man named Palmer. Circumstantial evidence was admitted, over objection, which tended to prove that Moore was implicated in another homicide wherein Palmer, after investigation, became possessed of certain facts which tended to prove Moore's guilt. This was known to Moore, thus furnishing a motive for the slaying. The court held that the evidence was competent, and that "the effect of circumstantial facts depends upon their connection with each other, and considerable latitude is allowed on the question of motive."

The general rule is that evidence of the participation by an accused person in the commission of a crime, other than that for which he is placed on trial, cannot ordinarily be admitted in evidence against him. But the rule has its exceptions. In a recent well-considered case the exceptions are discussed. The court observed: "It is a well-established rule of evidence in criminal prosecutions, and excludes, for illustration, evidence tending to prove various forgeries on the trial of an indictment charging grand larceny, and evidence of different larcenies on the trial of an indictment charging murder, or evidence of any other crime which is distinct and independent in class and character from that on trial. But like other rules of both law and evidence it is not without well-defined exceptions under which evidence of other crimes is admissible. In fact the exceptions are as well established as the rule itself. * * * In such case the evidence is admissible, not to establish the other crime, but as confirmatory of the evidence tending to show the commission by defendant of the one on trial." *State v. Monroe,* 142 Minn. 394.

The exception, though not directly involved, is recognized in *Palin v. State,* 38 Neb. 862, and authorities are there cited in support of the application of the exception to the rule in a criminal prosecution. See, also, *State v. Schaffer,* 70 Ia. 371; *State v. Wallack,* 193 Ia. 941; *State v. Robinson,* 35 S. Car. 340; *State v. Leroy,* 61 Wash. 405; *State v. Norris,* 27 Wash. 453.

It is argued that the court erred in that the jury were not instructed in specific terms in regard to the purpose for which the evidence of the Beethe burglary and theft was admitted. But defendant did not request such instruction, and he should not now be heard to complain in view of the instructions given in respect of the weight and credibility of the evidence and in respect of the fact that the jury must be satisfied beyond a reasonable doubt that at the time and place charged in the information the defendant was guilty of the theft of the goods named in the information. In a recent case we held that error could

not be predicated upon the failure to charge the jury on a given point without a request therefor, unless it is upon a question where a statute or positive rule of law required the giving of such instruction. *Georgis v. State,* 110 Neb. 352; *State v. Gaston,* 96 Ia. 505. The evidence, *inter alia,* shows that the Eversole and Beethe burglaries, as contended by the state, were so closely connected in point of time and place as to be a part of the same transaction. And particularly is this apparent in view of the fact that goods from both stores were found in defendant's possession shortly after the burglaries. The conclusion is that the court did not err in admitting evidence of the theft of the Beethe goods.

Defendant interposed evidence tending to prove an alibi which, if believed by the jury, would have entitled him to an acquittal, but we do not find it necessary to discuss this feature of the case other than to observe that the jury evidently did not accept the version of defendant's witnesses on this point.

It may here be noted that defendant has attached to the record, a second showing which tends to establish an alibi. This showing was made since the case was tried before. But as a reviewing court, we cannot, for obvious reasons, consider matter here which has not been first submitted in the trial court.

Reversible error has not been shown. The judgment of the district court is

AFFIRMED.

Note—See Criminal Law, 16 C. J. secs. 1132, 1134, 2281, 2290, 2293, 2498; 17 C. J. sec. 3328—Larceny, 25 Cyc. p. 127.