Smith v. State.

JOHN H. SMITH V. STATE OF NEBRASKA.

FILED MARCH 19, 1926.   No. 25034.

1. **Criminal Law: EVIDENCE OF ANOTHER CRIME.** "The general rule is that evidence of the participation by an accused person in the commission of a crime, other than that for which he is placed on trial, cannot ordinarily be admitted in evidence against him. But the rule has its exceptions which are as well established as the rule itself, and may be applied in a given case, not to establish the other crime but as confirmatory of the evidence tending to show the commission by defendant of the crime for which he is being tried." *Welter v. State*, 112 Neb. 22.

2. ———: **PROOF. QUESTION FOR JURY.** Whether proof of the unlawful conversion of goods by defendant, for which he was not informed against, tended to prove the unlawful conversion of goods, which he was charged with having converted, is a question of fact for the jury. *Welter v. State*, 112 Neb. 22.

3. **Embezzlement: AFFIRMANCE.** Upon examination of the record, we conclude that the verdict is supported by the evidence.

ERROR to the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Affirmed.*

*D. H. Oliver,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Harry Silverman, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

John H. Smith, defendant, obtained a diamond ring and a gold watch, of the alleged aggregate value of $115, from the J. J. Dreyer Company, an Omaha firm which dealt in jewelry.   Upon complaint, by the firm, the county attorney filed an information wherein defendant was charged with having "feloniously converted" the property "to his own use with an intent to steal the same."   The jury found defendant guilty, whereupon the court sentenced him to serve a term of 18 months in the penitentiary.   Defendant has appealed.

The action was brought under section 9631, Comp. St. 1922, which provides:

"If any bailee of any money, bank bill or note, goods or chattels shall convert the same to his or her own use, with an intent to steal the same, he shall be deemed guilty of larceny in the same manner as if the original taking had been felonious; and on conviction therefor, shall be punished accordingly."

Defendant obtained the property under a written agreement wherein, among other things, the property was "valued at $115," for which he agreed to "pay the rent of $12.50 in advance for the first month and the weekly rent of $2.50 in advance on Wend. of each wk. thereafter or return said property in good order."

Whether the written instrument between the parties, and the facts, constituted defendant a bailee of the property, as the state contends, or whether it was a conditional sale, as defendant contends, is one of the main questions here.

A signed confession is before us, which was given by defendant to a policeman, which defendant contends is incompetent.   In this confession, which seems to have been voluntary, defendant stated that he gave Dreyer "a bad check for $12.50," as an initial payment.   In fact, he never made any payment to Dreyer.   However, on the same day that defendant obtained the property, he pawned it and obtained $35 thereon from the pawnbroker.

Defendant also stated in his confession that, a few weeks

before the Dreyer transaction was consummated, he obtained a watch and ring from another dealer, valued at "about $110," on which he paid $27.50 and turned in "an old watch" and chain valued at $15 therefor. This ring he pawned for $25 at one pawnshop and the watch for $11 at another pawnshop, giving the name of "Frank Ingram" to the pawnbroker to whom he pawned the watch, instead of his own name. Evidence of the two other like transactions appear in the record, in addition to those noted above, which need not be here discussed. The evidence, in its entirety, doubtless convinced the jury that, from the inception of the transaction with Dreyer, defendant was possessed of an "intent to steal" the property. We cannot agree with counsel's argument that the verdict is not supported by competent evidence. The issuance by defendant of the worthless check, and the giving of an anonymous name to one of the dealers, when considered with all of the evidence, was sufficient to convince the jury that defendant had embarked on a career of thievery and that he unlawfully converted the Dreyer property to his own use. In an early case we said:

"In a prosecution for the statutory crime of larceny by a bailee the gravamen of the charge is the felonious conversion, and the intent may be shown to have been entertained as of the time of the reception of the possession of the property or to have arisen during the continuance of such possession." *Davis v. State,* 54 Neb. 177.

It is elementary that a voluntary confession of a defendant is competent evidence in a criminal case. In *Cohoe v. State,* 82 Neb. 744, it was held that such confession, with even slight corroborating circumstances, may be sufficient to establish the *corpus delicti.* In the *Cohoe* case it was also held that, in a prosecution for the crime of larceny of money by a bailee, evidence that the accused obtained other sums of money in like manner and about the same time, and the disposition he made of such money, may be received, as tending to show guilty knowledge and intent. Clearly,

the case at bar comes within the meaning of the above citations.

In *Welter v. State,* 112 Neb. 22, the same principle is discussed, and reference is there had to decisions which support the view expressed in this opinion. The following are among the cases there cited: *Jones v. United States,* 179 Fed. 584, is a case in which the court held:

"On the trial of a defendant for conspiracy to defraud the United States of public lands, evidence that he had previously been engaged in the illegal acquisition of public lands elsewhere by a different method was admissible as bearing upon the questions of intent, purpose, and design." *People v. Mead,* 50 Mich. 228; *Frazier v. State,* 135 Ind. 38; *State v. Franke,* 159 Mo. 535; *People v. Moeller,* 260 Ill. 375; *State v. Valwell,* 66 Vt. 558; *Moore v. United States,* 150 U. S. 57.

It is important to note, too, that by the terms of the contract herein defendant had an option to make the payments, as therein designated, "or return said property in good order." In Williston, Sales (2d ed.) sec. 336, it is pointed out that an instrument of this character is not a conditional sale contract, where it contains a provision that the contract can be terminated "at any time by returning the property."

The following case, which has been cited many times with approval, sustains the contention of the state. And it announces a wholesome rule of law which seems, with peculiar fitness, to apply to the facts before us:

"Where by the contract the vendee receives a chattel which he is to keep for a certain period, and if in that time he pays for it the stipulated price, he is to become the owner, but if he do not pay the price, he is to pay for its use, the vendee receives it as a bailee, and the right of property is not changed until the price is paid." *Rose v. Story,* 1 Pa. St. 190.

Substantially the same rule was restated by the same court in this language:

"Where by a contract the vendee receives a chattel to

Smith v. State.

keep for a certain time, and to become the owner of it then, if he has paid the stipulated price, but if otherwise to pay for its use, the vendee receives it as bailee, and the property is not changed till the price is paid." *Enlow v. Klein,* 79 Pa. St. 488.

It will be noted that the present case comes within the rule announced in the *Rose* and *Enlow* cases, in that the agreement here provided, in effect, for payment for the use of the property, unless returned.

Defendant's argument that the confession is incompetent is based largely on the fact that it relates to the commission of other crimes which defendant says he committed, and that the court therefore erred in permitting it to go to the jury.   The objection is not well founded.   The law is well settled, in federal and state courts, that while evidence of the participation by an accused person in the commission of a crime, other than that for which he is placed on trial, cannot ordinarily be admitted in evidence against him, the rule, nevertheless, has its exceptions, which are as well established as the rule itself, and may be applied in a given case, not to establish the other crime, but as confirmatory of the evidence tending to show the commission by defendant of the crime for which he is being tried.   On this proposition the Minnesota court said:

"Evidence disclosing a general system practiced by defendant of stealing or receiving stolen automobiles and so disfiguring them as to render identification by the owner difficult or impossible, and then disposing of them on the market, is admissible in corroboration of the inference of guilt arising from the possession and control by him of a recently stolen automobile which, while so in his possession, had been subjected to the systematic treatment given other stolen cars." *State v. Monroe,* 142 Minn. 394.

It fairly appears from his confession that defendant, when he obtained goods from one pawnshop, promptly, and perhaps on the same day, pawned and obtained money on the same goods at some other pawnshop.   And, besides giving a check to Dreyer, on a bank where he had no funds,

he gave a fictitious name to one of the pawnbrokers with whom he dealt. The facts here, as disclosed by defendant's confession, and the record generally, were properly submitted to the jury. There is no reasonable doubt that, under the facts and the law, defendant was a bailee of the goods in question.

Defendant testified in his own behalf, and, just before the case was closed, he was asked if there was anything in his written statement that was not true. He answered: "No, sir; not as I know of." There is nothing in the record which tends to show that coercion was used in obtaining the confession. On the contrary, it seems clearly to appear that the confession was voluntarily made. It may be noted that the court, to further safeguard defendant's rights, instructed the jury that, "in weighing the testimony of police officers, greater care should be used than in weighing the testimony of ordinary witnesses because of the natural and unavoidable tendency of police officers to procure and remember with partiality such evidence as would be against defendant."

Defendant has presented additional assignments of alleged error, including objections to certain instructions, which we think are not well taken and do not find it necessary to discuss.

We conclude that the facts and the law sustain the contention of the state and the verdict of the jury as well. The court did not err in refusing to sustain defendant's motion for a new trial. The judgment is right, and it must be, and hereby is, in all things

AFFIRMED.