Robert L. **WILLIAMS**, Plaintiff in Error,

v.

**STATE** of Oklahoma, Defendant in Error.

No. A–13039.

Court of Criminal Appeals of Oklahoma.

Nov. 1, 1961.

Rehearing Denied Nov. 29, 1961.

E. E. "Ike" Zamrzla, Robert G. Grove, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Robert L. Williams, hereinafter referred to as the defendant, was charged by information in the district court of Oklahoma County with the crime of embezzlement. He was tried before a jury who found the defendant guilty and left his punishment to be assessed by the court. The trial judge sentenced the defendant to serve three years in the Oklahoma State Penitentiary.

The charging part of the information upon which the defendant was tried read as follows:

" * * * Robert L. Williams, whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of Embezzlement in the manner and form as follows, to-wit:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, was then and there entrusted as salesman with $356.70 good and lawful money of the United States of America, and the personal property of Reserve National Insurance Company, and the said defendant while in possession of the said money did unlawfully, wilfully, wrongfully, fraudulently, and feloniously, take, steal and appropriate, convert and embezzle said money to defendant's own use and benefit and in a manner and for a purpose inconsistent and contrary to and not in accordance with the trust, imposed in said defendant as such salesman by the Reserve National Insurance Company, with the unlawful, wrongful, fraudulent and felonious intent to cheat, wrong and defraud the said rightful owner thereof and to appropriate the said $356.70 to defendant's own use and benefit and to permanently deprive the said rightful owner thereof; * * *."

Defendant appeals to this court upon two assignments of error. First, that the court erred in refusing to sustain the demurrer offered by the defendant and a motion to dismiss for lack of venue; and secondly, that the court erred in permitting the state to amend the information after defendant had testified, and over the objection of defendant.

The testimony established at the trial showed defendant had entered into a contract with Reserve National Insurance Company as an agent engaged in soliciting applications for insurance. Agent was to receive a commission and renewal commissions upon the policies sold by him. Reserve National Insurance Company was located at 418 NW 5th street in Oklahoma City. Under the contract agent was to solicit applications and forward to the company for approval or rejection and to collect the initial premium. The contract provided that all money and securities received by the agent as full or partial payment of first year or renewal premium " * * * shall be held in trust for the company and immediately delivered to the company". It further provided that the Agency should not make any personal or other use of said money or intermingle with his personal or other funds.

The president of the company, Mr. John Gammill, testified that Agent was instructed to turn in the premiums collected at the home office immediately as he would write a policy, but if Agent was out of town he turned in the money each Saturday or at least once per week, the money to be turned in to the home office 418 NW 5th street, Oklahoma City.

The testimony reveals that while acting as said Agent the defendant wrote an application on the 10th day of September 1959 for one Albert A. J. Rauh of Alva, Oklahoma and took from him a check made out to defendant as premium for said policy in the amount of $356.70. Defendant took the check to the Alva State Bank and cashed

the check and received the money. About a week later Mr. Rauh called the company's office and made inquiry as to why he had not received his policy. The defendant was in the office of the company on September 19 and advised them he had not written a policy for Mr. Rauh. Several days later on October 12, according to Mr. Gammill, defendant called him from Sacramento, California and said he was sorry he had "done all the stuff" and would like an opportunity to straighten himself out. Mr. Gammill related a portion of defendant's statement as follows:

"* * * without being mercenary, and begging around, and said he didn't have any money, and said he had blown it all in; and I said, 'well you got to submit the business, how much is it?' And he says, 'I know I have,' he says, 'I know I have done wrong and I am sorry. * * *'"

Also there was introduced into the record a letter from defendant to Mr. Gammill as follows:

"Dear John, I am very sorry to have left the way I did but I was in a service station and paid for my gas, I also was in the rest room after that, and when I got to the cafe downtown I was missing my wallet. I drove back to the station, but it wasn't there. I had over $1400.00 in it practically all cash. After having talked to Bob about accounts, and so forth, and knowing of the outcomings of having to turn in short, I thought it best that I leave to where I would have a chance to make it up. It will probably take about 90 days, but don't worry, I will not let you down on my turn-in. I will send you an amount each month until it is caught up. I am living in Miami now and have a good job. I thought it better if I got away from insurance until I can get you paid. I am sorry again for having left the way I did, but I had to have a chance, and like I said, after having talked to Bob, I knew I wouldn't there. Thanks for your patience. Bob Williams."

There was little conflict in the testimony as it concerned the transaction. Defendant contended that it was not uncommon to be short, but it was somewhat of an open account; that he had paid some of the shortages but had informed the company that he would not pay any more until he had a full accounting to determine the exact amount of the shortages. He further testified he had authority and instructions to cash the checks out in the field.

■ Defendant contends that Oklahoma county was without venue and argues that if a crime was committed it was in Woods county where the check was cashed and the money converted.

It is to be observed from the testimony that defendant was the trustee for the insurance company and it is admitted by both sides that the money collected was to be turned in periodically at the office of the company in Oklahoma City. The defendant had authority to cash the check, made out to him, and owed a duty to turn in the company's portion of the money at the Oklahoma City office. Had he turned in the money there would have been no crime. The commission of the crime was a result of his failure to account to the company for the money he held for them as trustee. Though this court has not passed squarely upon the issue, numerous other jurisdictions have adopted what seems to be the practical rule. In the case of State v. Douglas, 70 S.D. 203, 16 N.W.2d 489, 502, the Supreme Court said:

"The crime charged is, in effect, an embezzlement of the funds of the State. It is usually held that the proper venue for embezzlement is the county where the act of appropriation or conversion took place and it has been held that the venue of the indictment charging an embezzlement consisting of a failure to account should be laid in the county where the accused was liable to account. 18 Am.Jur. 611 § 65 and the following cases more or less directly support the rule: Rogers v. State, 14 Okl. Cr. 235, 170 P. 269, L.R.A.1918E, 742;

People v. Gordon, 133 Cal. 328, 65 P. 746, 85 Am.St.Rep. 174; State v. Hengen, 106 Iowa 711, 77 N.W. 453; Hopkins v. State, 52 Fla. 39, 42 So. 52; People v. Davis, 269 Ill. 256, 110 N.E. 9; Kossakowski v. People, 177 Ill. 563, 53 N.E. 115; State v. Bailey, 50 Ohio St. 636, 36 N.E. 233 * * *".

In the case of State v. Bisanti, 233 Iowa 748, 9 N.W.2d 279, 280, the court said in part that:

" * * * the rulings of the court were right. Contrary to the appellant's contention, the record amply shows that the defendant was to account for the receipts of the business at Perry, to the home office of the Laundry Company at Boone. While the original contract of 1930 does not expressly state that defendant was to so account, it did provide that the receipts were to be deposited in the bank at Perry, subject to withdrawal only by the home office. The testimony of the president of the company was that it was the defendant's duty 'to see that money was collected, put in the bank, and make accounting to our office in Boone. * * * He was to report once a month and check up. * * *' "

"It has been the rule in this state for many years that one charged with embezzlement may be prosecuted either in the county where the unlawful taking and conversion of his principal's money took place, or in the county where it was his duty to make an accounting of the money to his principal. Appellant does not seriously question that such is the law. The following decisions fully sustain the rule: State v. Hengen, 106 Iowa 711, 77 N.W. 453, where the matter is fully discussed by Ladd, J.; State v. Maxwell, 113 Iowa 369, 370, 85 N.W. 613; State v. Stuart, 190 Iowa 476, 479, 180 N.W. 186. See, also, State v. Carmean, 126 Iowa 291, 295, 102 N.W. 97, 106 Am.St.Rep. 352; State v. Dvoracek, 140 Iowa 266, 270, 118 N.W. 399. See, also, section 13451 Code of 1939."

In the case of Podell v. State, 228 Wis. 513, 279 N.W. 653, 654 the court recites from McClain's Text on Criminal Law § 650 wherein it is stated:

" 'If, however, the crime charged consists in failure to account the venue should be laid in the county where the defendant was under obligation to account, or declined to do so upon proper demand.' " (numerous cases cited supporting the rule).

This court is of the opinion that the rule declared in the above cited decisions is reasonable and without such a rule in many cases where embezzlement of funds is clear, there could be no conviction because of the impossibility to prove just when and where the agent or trustee actually converted the funds or formed the intent to defraud. Therefore, we must proclaim that defendant's contention that the court in Oklahoma County was without jurisdiction is without merit.

Defendant next contends that the court erred in permitting the state to amend the information after they had rested and defendant had taken the stand and testified. The amendment to the information changed the date of the alleged commission of the crime from September 10 to September 19. Defendant objected to the information being thus amended which objection was overruled by the trial judge.

The law of this state (22 Okl.St.Ann. § 304) provides that:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

This court has held numerous times that the information may be amended after plea and during trial upon leave of the court where the amendment does not serve to

prejudice the substantial rights of the defendant. We fail to see where defendant's rights were prejudiced or materially affected by the change.

In the case of Robards v. State, 37 Okl. Cr. 371, 259 P. 166, the information was amended upon leave of the court after the trial had commenced. The amendment changed the date of the alleged commission of the offense from September 13 to September 16. The court held the amendment was a matter of form which may properly be made after the empaneling of the jury.

Defendant contends the amendment was made for the purpose of establishing venue in Oklahoma County. No doubt the original information alleging the commission of the crime on September 10 had in mind that defendant cashed the check given him by Mr. Rauh for payment of the policy on that date. The testimony revealed that defendant failed to account for the money, which he held in trust, on September 19 at which time he appeared in the home office of the Reserve National Insurance Company in Oklahoma County. The information stated all the elements of the crime of embezzlement. The changing of the date from the 10th to the 19th to conform to the testimony could not, in your writer's opinion, materially affect the rights of the defendant. Under the laws of this state it is doubtful if an amendment was necessary. The Oklahoma Statute, 22 Okl.St.Ann. § 405 reads as follows:

"The precise time at which the offense was committed need not be stated in the indictment or information; but it may be alleged to have been committed at any time before the finding thereof, except where the time is a material ingredient in the offense."

A thorough review of the record reveals no error sufficient upon which to predicate error.

The judgment and sentence of the trial court is therefore affirmed.

BRETT and BUSSEY, JJ., concur.